[No. 9767.   Department One. — May 24, 1887.]

IN THE MATTER OF THE ESTATE OF WILLIAM H. MOORE, DECEASED.  WILLIAM H. MOORE, APPELLANT, *v.* THOMAS W. MOORE, ADMINISTRATOR, RESPONDENT.

ESTATE OF DECEDENT — SETTLEMENT OF ACCOUNT — TRIAL BY JURY — CONTEST — INSTRUCTIONS. — A trial by jury of the issues raised by a contest to the account of an administrator of the estate of a deceased person is not a matter of right, and their verdict thereon is merely advisory to the court; consequently, an irregularity in the formation of the jury, or an error in the instructions, is immaterial.

ID. — EXPENDITURES FOR SUPPORT OF MINORS — EVIDENCE TO REBUT NECESSITY OF. — On the trial of an objection to certain items in the account wherein the administrator seeks credit for expenditures made by him for

the care and support of the minor children of the deceased, for the alleged reason that their mother, in whose favor a family allowance had been made, had voluntarily left the family reside ice, and abandoned the children and refused to contribute to their support, evidence of the mother tending to show the contrary, and that she had been forcibly ejected from the family residence by the administrator, is admissible.

Id. — Attorney's Fees — Traveling Expenses. — An administrator is entitled to credit for payments made for the services and traveling expenses of his attorney, not exceeding a reasonable compensation for the labor actually performed, when the same were necessary to enable him to properly perform the duties of his trust.

Id. — Unauthorized Expenditures — Unnecessary Services of Attorney and Book-keeper — Purchase of Land — Erection of Building. — An administrator is not entitled to be allowed for payments made to an attorney or book-keeper for services which he should have performed himself, and for doing which he receives a commission; nor for services made necessary in consequence of neglect of duty or unnecessary and unreasonable delay in closing the administration; nor for moneys expended in the purchase of land and the erection thereon of a building adjoining a hotel belonging to the estate.

Id. — Services of Book-keeper when Proper. — Whether an administrator should be allowed for payments made for the services of a book-keeper depends upon the circumstances of the estate, and the allowance thereof is properly within the discretion of the probate judge.

Id. — Delay in Administration — Evidence. — On such a contest, evidence tending to show that the administration of the estate was unnecessarily prolonged through the willful fault of the administrator, and that certain expenditures were necessitated by the delay, is admissible.

Id. — Payment of Taxes — Loss of Tax Receipts. — Parol evidence of the payment of taxes by the administrator on the property of the estate is admissible, after the loss of the tax receipts has been shown.

Id. — Insanity of Administrator — Subsequent Ratification of Expenditures. — Expenditures made by or on behalf of an administrator, while legally confined in an insane asylum, may be ratified by him after his restoration to mental capacity has been judicially determined.

Id. — Loan by Administrator — Failure to Collect Interest. — An administrator is not chargeable with the interest stipulated to be paid on a loan of the moneys of the estate made by him, which he afterwards fails to collect, unless it is shown that the interest has been or can be collected by him.

Appeal from an order of the Superior Court of Santa Cruz County settling the accounts of an administrator of the estate of a deceased person.

Pending the settlement of the estate in question, the administrator was judicially declared insane, and com-

mitted to the lunatic asylum. He was granted a certificate of discharge therefrom, and subsequently judicially declared restored to capacity and of sound mind. On the trial, the court charged the jury in effect that the expenditures made by or on behalf of the administrator, while he was in the asylum, could be ratified by him after his restoration to mental capacity had been determined. The Pacific Ocean House, mentioned in the opinion, was a hotel in which the decedent owned an undivided half interest. The further facts are stated in the opinion of the court.

*Underwood McCann, guardian ad litem,* and *Charles B. Younger,* for Appellant.

*Hall & Rodgers,* for Respondent.

TEMPLE, J.—The decedent died October 30, 1871, leaving a widow and five minor children, four of whom were the offspring of a previous marriage. Letters of administration were issued to the respondent March 4, 1872, and an inventory filed June 27, 1872. Respondent, as administrator, took possession of the property of the estate, but allowed the widow and the children to occupy the residence until May, 1877, when, as is claimed by respondent, she voluntarily left with her own child, but, as she contends, she was forcibly excluded by the respondent.

On the 29th of April, 1874, the court made an order allowing "for the support and maintenance of the family of deceased, consisting of a widow and five minor children, the sum of $250 per month, from the death of the deceased until the close of the administration."

September 16, 1882, the respondent filed an account of his administration. The appellant, William H. Moore, a minor child of the deceased and a son of the widow, contested the account, filing twenty-six so-called exceptions to different items, each exception based upon many dif-

ferent grounds, and some of them attacking many items of the account.

Upon the trial of the issues thus made, the contestant demanded a jury, which was granted by the court, and, special issues were framed.

The account was very lengthy, extending through many years, and including a great many receipts and expenditures. The trial was long, tedious, and complicated, imposing upon court and counsel a vast amount of labor, which would not have been necessary had the trial been before the court without a jury.

Very many of the alleged errors complained of arose in the impaneling of the jury, and the allowance or refusal of instructions. The record in fact affords very convincing evidence of the unsuitableness of this mode of trial in such contests, and the question arises whether the contestant was entitled to a jury trial as a matter of right, or whether it was allowed only as a matter of discretion, as in equity cases, the verdict being only advisory to the court.

The fact that a jury trial is so inappropriate and inconvenient upon such a settlement raises a strong presumption that it was never intended to allow it as a matter of right. It is utterly impracticable for a jury to wade through, comprehend, and disentangle a long account, or to express an intelligent judgment upon each item. Furthermore, it was evidently contemplated that the settlement should be made by the court. Many matters are left entirely to the discretion of the court to allow or disallow. In many places the code speaks of claims allowed by the court, and provides for a referee to examine the account and report thereon.

It has been held that the right of trial by jury is secured by the constitution only in cases in which it had previously existed, in the administration of justice according to the course of the common law. Probate matters belonged to ecclesiastical jurisdiction, where a

jury was not a right. Such a proceeding is not really an action at law as defined in the code. (Code Civ. Proc., sec. 22.)

There may be cases in which it would be very desirable to submit an issue arising on the settlement of an account to a jury. In such cases no doubt the court may frame an issue for a jury, and the verdict will even then be only advisory to the court.

The trial of the issues made required the examination of a long account; that, indeed, was the purpose of the entire proceeding. In such cases the court may of its own motion, and without the consent of the parties, refer such issue to a referee to hear and report. And we do not understand that at common law the right existed to have the examination of a long and complicated account made by a jury.

If the verdict is only advisory to the court, and the court has found upon all the issues submitted, it would seem that a mere irregularity in the formation of the jury or error in the instructions could not affect the substantial rights of the appellant.

The difficulty with this construction is found in sections 1716 and 1717 of the Code of Civil Procedure.

Section 1716 is: "All issues of fact joined in probate proceedings must be tried in conformity with the requirements of article two, chapter two, of this title, and in all such proceedings the party affirming is plaintiff, and the one denying or avoiding is defendant. Judgments therein, on the issues joined, as well as for costs, may be entered by the court, and enforced by execution or otherwise by the court, as in civil actions."

Section 1717 reads: "If no jury is demanded, the court must try the issues joined. If, on written demand, a jury is called by either party, and the issues are not sufficiently made up by the written pleadings on file, the court, on due notice to the opposite party, must settle and frame the issues to be tried, and submit the same,

together with the evidence of each party, to the jury, on which they must render a verdict."

This language is certainly very positive and comprehensive. Was it really intended that every possible disputed fact in any step in the administration of an estate might, as a matter of right, be made an issue to be tried by a jury? If such be the construction, any litigious heir, though entitled to but an infinitesimal share of the estate, might devote the entire amount to court costs, and indefinitely prolong the settlement; for the same chapter provides for motions for new trial, bills of exception, and appeals, as in civil actions.

We think the courts would have little difficulty in confining the operation of these sections to those cases in which the code has expressly authorized issues of fact to be framed. Without such a provision, under the decisions, parties to a contest in the Probate Court would never be entitled to a jury trial. But we think the statute should not be construed as granting an absolute right to a jury trial in cases in which, according to the course of the common law, a jury trial was denied as inappropriate, and especially upon the settlement of the accounts of administrators and executors, where so much is left to the mere discretion of the judge, and in the face of the language of the code, in many sections implying that the settlement shall be by the court. (Code Civ. Proc., secs. 1632, 1636–1638.)

We think the court erred in excluding the testimony offered to show that the widow was forcibly excluded from the family residence. It was claimed by the administrator that she had voluntarily left with her own child, and thereupon the administrator seems to have taken charge of the residence and the other children of the deceased. From that time only fifty dollars per month was paid to the widow, although $250 had been allowed by the court. The pretended reason for this of course was, that she had abandoned the other children of the deceased. The same

fact constituted the excuse for expending the money of the estate in the support of the other children.

The administrator had been allowed to testify that she voluntarily left, that she had not offered to return, and that he had interposed no objections to her doing so.

She offered evidence to disprove all this, and to show that all the supplies, clothing, groceries, etc., contained in the account, were to maintain the homestead and family in the exclusive possession of respondent while she was forcibly excluded from the family residence by the administrator.

Presumptively the mother would be the head of the family, and the proper person to receive the family allowance. It must be, however, in the power of the court to direct the expenditure of the allowance in such manner as will insure the maintenance of the family, and it may happen in some cases that the mother would not be a suitable person to be intrusted with it. The administrator does not, however, by virtue of his office, become charged with the care of the family, and had no right, arbitrarily, to remove the children from the mother. Nor were the disbursements here in question proper charge, against the estate. If, however, the conduct of the administrator was upon investigation found to be justifiable, and the expenditures for the family necessary, a reasonable allowance could be made for the support of that portion of the family. It would appear that to determine this question the evidence excluded was material and proper.

For the same reasons we think the court erred in sustaining the objection to the question asked Mrs. Moore relative to her readiness and willingness to care for, educate, and support the minor children of deceased.

We cannot say that the court erred in admitting testimony as to the traveling expenses of the attorney for the administrator. In allowing such claims, two limitations must always be kept in view.

1. The allowance should not exceed a reasonable compensation for the labor actually performed.

2. It should never exceed just compensation for such legal assistance as was necessary to enable the administrator to properly discharge the duties of his trust.

This measure of compensation would be the same whether the attorney resided at Santa Cruz or San Francisco. The question is, What would be a reasonable compensation for the services required?

An allowance ought not to be made for an attorney for services which the administrator should perform himself, and for doing which he receives a commission, nor for services made necessary in consequence of neglect of duty, or unnecessary and unreasonable delay in closing the administration; such services should be paid for by the administrator from his commissions.

We think the court erred in allowing the claim for moneys expended in the erection of a new building to the Pacific Ocean House. This money was not expended in the care and management of the estate. It was the duty of the administrator to administer and turn over the estate as soon as possible, and not to speculate with it, or carry on business on its account, or to improve it for the benefit of the heirs. (*Page's Estate*, 57 Cal. 240; *Brenham* v. *Story*, 39 Cal. 179; *Tompkins* v. *Weeks*, 26 Cal. 50; *Knight's Estate*, 12 Cal. 200; S. C., 73 Am. Dec. 531.)

In the matter of the items for clothing and supplies for the children of decedent, enough has already been said. If there was error in allowing the other charges set out in point 6 of appellant's brief, such error is not made to appear to us.

As to the books of account, it does not appear what the nature of the account was. Probably it was an account of the receipts and expenditures on the farm. Nor does it appear that there was not other evidence as to each of those expenditures. From the bill of exceptions, we can-

not undertake to say that the evidence was not admissible in connection with other testimony.

We cannot lay down as a universal rule that in no case should an administrator be allowed to employ a book-keeper. This may properly be left to the probate judge. He may allow it if proper. If the services were such as, under the circumstances, the administrator ought to have performed, and for which his commissions are intended to compensate him, such charge should be disallowed.

We think the court erred in allowing the sum of eight hundred dollars for the lot of land adjacent to the Pacific Ocean House. After what we have said in regard to the expenditure for building the addition to the hotel, it is not necessary to discuss the matter further.

We are unable to see how the appellant was injured by the ruling in regard to the certificate of discharge from the lunatic asylum.

We also think the court erred in excluding testimony offered to prove that the administration of the estate was unnecessarily prolonged through the willful fault of the administrator. This point seems to have been made in most, if not all, of the exceptions, and was a most important question with reference to the settlement. We refrain from expressing any opinion as to whether, as a matter of fact, the administrator is in fault in that respect, but so far as the bill of exceptions discloses, there is no good reason why the estate could not have been settled up and the property turned over to the owners within one year. If he has failed in his duty in this respect, he should not be allowed any costs incurred which have been necessitated by such delay. It would seriously affect the question of the allowance of attorney's fees, and still more seriously the matter of the allowance for the support of the family. Apparently, it is the most important question involved in the controversy.

There seems to have been no lack of evidence in

regard to the expenses paid by the administrator before his appointment. They were fully proved to the satisfaction of the court.

There was no error in admitting oral testimony of the payment of taxes. The tax receipt is an official document provided by law, and raises a presumption that it is given for taxes duly assessed. This evidence, however, does not preclude other evidence, and in this case the loss of the receipts was shown before the oral testimony was received.

We do not understand from the findings that the estate suffered any loss from the loan of two thousand dollars to J. D. Chase & Co. It seems to have been found that the full sum was charged against the administrator without interest. If interest ought to have been charged upon that amount, the record fails to show the facts which would require it. While the good faith of the administrator is no defense for the loss of money so loaned by him, still he cannot be held responsible for the interest stipulated to be paid, unless he has collected or can collect it.

This decision is, of course, upon the facts as presented in the record, which is quite meager. Upon a retrial, it is possible a very different case may be made.

The order and decree are reversed, and the cause remanded for a retrial of the contest, in accordance with this opinion.

PATERSON, J., and McKINSTRY, J., concurred.