[Civ. No. 36985. First Dist., Div. Four. May 14, 1976.]

Estate of CHARLES S. HOWARD, Deceased.
BARRY BRANNEN, Petitioner and Respondent, v.
CHARLES S. HOWARD III et al., Objectors and Appellants;
CROCKER NATIONAL BANK, at Trustee, etc., et al.,
Objectors and Respondents.

**COUNSEL**

Ernst & Daniels, Dennis Daniels, Michael J. Keady, Matthew F. Quint and George Schraer for Objectors and Appellants.

Barry Brannen, in pro. per., for Petitioner and Respondent.

Heller, Ehrman, White & McAuliffe, Robert C. Harris and Lawrence C. Baker for Objectors and Respondents.

## Opinion

**EMERSON, J.\*—**

### Factual History

Charles S. Howard died in 1952 and his will was admitted to probate. The final distribution of the estate occurred years ago, but the probate court retained jurisdiction to oversee the administration of certain testamentary trusts. The will created nine such trusts. The assets of each included a one-ninth interest in a parcel of realty called the Ione Ranch. Four of the trusts have terminated and their shares of the Ione Ranch are now owned outright by the former beneficiaries or by their successors in interest. These parties will be referred to hereafter as owners. The other five-ninths interest in the ranch is owned by respondents Crocker National Bank (hereafter Crocker) and, Marcela H. Fenton, who are the trustees of the remaining five trusts. The owners and the beneficiaries of the trusts constitute the appellants herein. They appeal (and in some instances do not appeal) from certain orders and decrees as will be more fully discussed below.

Crocker, the managing trustee, entered into an agreement with the owners pursuant to which it has continued to manage the Ione Ranch on behalf of the owners as well as the beneficiaries. At some point, the owners and beneficiaries began to object to the manner in which the Ione Ranch was being managed by Crocker. That property had been leased to Interpace Corporation, and complaints were made about certain terms of the lease and about the amount of royalties paid by Interpace. In August 1971, respondent Brannen, an attorney, was engaged to represent the trustees and the owners in the matter of the Interpace lease. After negotiations which took place over a period of some 23 months, a settlement agreement was concluded pursuant to which the owners and trustees would receive increased royalty payments and other cash consideration from Interpace. The royalties payable under the agreement were to be received by Crocker on behalf of the trustees and owners.

### Procedural History

Between August 1970 and May 1974, the trustees rendered various accounts and petitioned to have them settled. Those among appellants

---

\*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

who were present or former beneficiaries filed objections and exceptions and requested, inter alia, that all accounts settled since the inception of the trusts be reopened and that the trustees be surcharged.[1] It was alleged that the trustees (a) failed to properly care for the property of the trusts; (b) failed to collect rents and royalties from real properties which are assets of the trusts; (c) failed to properly protect and preserve water rights in those properties; (d) failed to exercise that degree of care necessary to produce a reasonable return from the real and personal properties of the trusts; (e) permitted the lessees to remove minerals from the trust property without compensation; (f) improperly allowed waste of trust property by lessees and sublessees; and (g) concealed such misconduct in rendering prior accounts.

The hearing on the petitions for settlement and the objections thereto was subjected to many continuances. By an order filed on June 3, 1974, the court finally established July 1, 1974, as the hearing date. The order further provided that the court would take no testimony concerning the objections to the accounts but would permit appellants to file an offer of proof describing the evidence desired to be introduced in support of the objections. The offer of proof was filed as required. At the hearing, the court informed counsel that it would study the offer and indicated that it would later issue some form of order or decision. No testimony was taken.

On August 9, 1974, the probate court issued a memorandum decision stating that the accounts were approved and the objections rejected, and that appellants' request, previously made, for a jury trial was denied. The memorandum contained the following statement: "The Court finds the accounts in order and proper, accounting wise. Disputes about propriety of actions are or may be the subject of another type of litigation, but the accounts are in order. . . ." Thereafter, on October 8 and November 14, 1974, the court issued its decrees approving the disputed accounts. Those decrees expressly incorporated the memorandum decision. However, the decrees also stated, inter alia, that the trusts had been "faithfully managed and conducted strictly in accordance with the terms thereof," and that the accounts rendered by the trustees were "approved, allowed and settled in all respects as rendered and presented for settlement."

The foregoing proceedings leading to the settlement of the disputed accounts were paralleled by those relating to respondent Brannen's claim

---

[1]Some of the appellants have also filed an independent action against the trustees in the superior court, which action is now pending, claiming breach of trust, negligence, conflict of interest, and fraud.

for an award of fees and costs for his services in the matter of the Interpace lease. In January 1973, the trustees requested compensation for Brannen's services in an amendment to one of their accounts. On October 25, 1973, in an apparent effort to free this issue from the continuing controversy over the accounts, Brannen filed his own petition for an award. That petition described in detail the nature of his services in the Interpace matter. The probate court stated in its memorandum decision, referred to above, that Brannen's request for fees was proper and would be paid.

On September 4, 1974, the court entered its order providing that Brannen be awarded judgment against *the trustees* for the amount of his fees and costs. The order further determined, in effect, that the trustees' liability would be charged proportionately against the five remaining testamentary trusts and against income received by the trustees on account of the nontrustee owners of the Ione Ranch. The trustees were awarded a lien against such income for this purpose. This order was entered upon Brannen's own petition, rather than upon the petition of the trustees.

## THE APPEALS AND THE PARTIES

The court entered separate decrees settling the accounts as to the several beneficiaries and owners. The accounts ranged from the 17th to the 21st annual accounts. Two of the trusts terminated during the period involved and, as to them, final accounts were approved. We set forth the decrees, and the parties appealing from them in the margin.[2]

---

[2]Decree settling 17th through 21st accounts and reports of trustees of trust for benefit of Frank Robert Howard. (Oct. 8, 1974.)

Decree settling 18th through 21st accounts and reports of trustees of trust for benefit of Barbara Howard Wolf. (Oct. 8, 1974.)

Decree settling 18th and 19th and final accounts and reports of trustees of trust for benefit of Judith Linda Howard. (Oct. 8, 1974.)

Decree settling 18th and final account and report of trustees of trust for benefit of Leeann May Howard Grant, and declaring trust for her benefit has terminated. (Nov. 14, 1974.)

The parties appealing from these decrees are Charles S. Howard, III, Barbara Howard Lizarraga, Frank Robert Howard, Jr., the estate of Leeann May Howard Grant, and City National Bank, guardian of the estates of Brigitte Lyn Donihoo and Michael Vincent, minors, and co-executor of the estate of Judith Howard Smith.

All the above parties also appeal from the order awarding fees and costs to Brannen (Sept. 4, 1974). The following parties also appeal from the Brannen order, but *do not* appeal from the decrees settling the accounts: Estate of Anita Vanderbilt, Lindsay C. Howard and Mymy Howard.

QUESTIONS PRESENTED

A.  Did the probate court err in granting the petitions to settle the accounts?

    1.  Should the court have considered appellants' claims of trustee misconduct?

    2.  Were appellants denied a fair hearing?

    3.  Should a jury trial be held on the issues raised by appellants' objections?

B.  Did the probate court err in granting respondent Brannen's petition for fees and costs?

    1.  Did the court have the power to entertain the petition?

    2.  Did the court have the power to enter an order affecting the property interests of the owners?

    3.  Were appellants denied a fair hearing?

DISCUSSION

A.  Did the probate court err in granting the petitions to settle the accounts?

    1.  Should the court have considered appellants' claims of trustee misconduct?

■  It is apparent from the record that the probate court, in ruling on the trustees' petitions to settle their accounts, refused to consider appellants' claims that the trustees committed various forms of misconduct harmful to the trusts. The court was aware of the existence of the misconduct issue, since it was stated in the memorandum opinion that the accounts were in order "accounting wise" and that "[d]isputes about propriety of actions are or may be the subject of another type of litigation. . . ." The court apparently believed that it was required to do no more than determine the accuracy of the trustees' accounting for simple receipts and disbursements.

The range of the hearing is much greater than that. The accounts were rendered for settlement pursuant to Probate Code section 1120. That statute confers upon a probate court the power to pass upon a testamentary trustee's "acts as trustee."[3] The scope of a proceeding under section 1120 includes virtually all controversies that might arise between trustees and beneficiaries, including matters of trustee misconduct. (See *Estate of Bissinger* (1964) 60 Cal.2d 756, 765-766 [36 Cal.Rptr. 450, 388 P.2d 682, 19 A.L.R.3d 506]; *Coberly* v. *Superior Court* (1965) 231 Cal.App.2d 685, 688 [42 Cal.Rptr. 64]; *Estate of Hensel* (1956) 144 Cal.App.2d 429, 437 [301 P.2d 105]; 7 Witkin, Summary of Cal. Law (8th ed. 1974) Wills and Probate, § 257, p. 5759.) For example, in *Coberly* v. *Superior Court, supra,* 231 Cal.App.2d 685, the court said the following: "It appears to us that a hearing on a testamentary trustee's petition for approval of its accounts is the proper time and place for a beneficiary to raise the issue of the trustee's neglect of duty or failure to properly discharge its office. [Citations.] Indeed'failure to challenge the trustee's accounting at that time would in all probability preclude any challenge at a later date and make everything in the accounts res adjudicata. [Citations.]" (*Id.,* at p. 688.)

In view of this latter language, appellants contend that the decrees settling the accounts might be given res judicata effect in an independent action against the trustees now pending in the superior court. They point out that while the memorandum decision indicates that the probate court refrained from ruling on the misconduct issues, the final decrees contain language stating that the trusts have been properly managed and that the accounts are settled in all respects.

Appellants' fears in this respect are somewhat exaggerated. The res judicata effect to be given a decree settling an account is described in

---

[3]Probate Code section 1120 provides, in pertinent part: "When a trust created by a will continues after distribution, the superior court shall not lose jurisdiction of the estate by final distribution, but shall retain jurisdiction for the purpose of determining to whom the property shall pass and be delivered upon final or partial termination of the trust, to the extent that such determination is not concluded by the decree of distribution, of settling the accounts and *passing upon the acts of the trustee,* of authorizing the trustee to accept additions to the trust from sources other than the estate of the decedent, and for the other purposes hereinafter set forth. Any trustee appointed by will, or appointed to execute a trust created by will, may, from time to time pending the execution of his trust, or at the termination thereof, render for settlement his accounts and *report his acts as such trustee,* before the superior court in which the will was probated. For that purpose, the trustee shall present to the court his verified account and report, setting forth his accounts in detail, *reporting his acts as trustee,* and showing the condition of the trust estate." (Italics added.)

All further statutory references, except where otherwise indicated are to the Probate Code.

section 1123. That statute provides that such a decree, when final, "shall be conclusive upon all persons in interest . . . ." However, it has been said that "the settlement of an account is not conclusive except as to such items as are included in it and are actually passed upon by the probate court." (*Estate of de Laveaga* (1958) 50 Cal.2d 480, 487 [326 P.2d 129].) Since the probate court did not determine any misconduct issues arising in the case at bench, its decrees may not be deemed conclusive upon those issues. Hence, it might be thought sufficient to modify the disputed decrees so as to make them conform more closely with what was actually decided.

Such a modification, however, would not, in itself, cure the court's error. The determination that the accounts were in order "accounting wise" may well have been made inaccurate by the court's failure to consider the evidence of trustee misconduct. Losses sustained by a trust as the result of trustee misconduct should be considered in determining the adequacy of an account rendered by the trustee. (See *Purdy* v. *Johnson* (1917) 174 Cal. 521, 527-530 [163 P. 893]; *Estate of Hensel, supra,* 144 Cal.App.2d 429, 438; Bogert, Trusts & Trustees (2d ed. 1962) § 971, pp. 213-217.) Hence, the evidence considered by the probate court was incomplete and was therefore insufficient to support even the court's limited finding that the disputed accounts were in order "accounting wise," in the absence of a consideration of all the evidence.

2.   Were appellants denied a fair hearing?

Appellants contend that a full-scale evidentiary hearing of an adversary nature was required in this case in order to satisfy the requirements of due process and section 1120. They assert that the hearing actually held fell short of this standard, since they were allowed to do no more than make their offer of proof and the trustees were not required to put on testimony in support of their accounts.

Section 1120 provides for a hearing to be held on a trustee's accounting, but it does not describe the nature of the hearing. Although appellants present no convincing argument that the statute has been judicially interpreted as requiring the sort of hearing which they say was necessary, they refer to cases which indicate that due process requires, at a minimum, that a party to a contested proceeding be provided with the opportunity to put on evidence and to cross-examine and otherwise attack opposing evidence. (See, e.g., *Estate of Buchman* (1954) 123 Cal.App.2d 546, 560 [267 P.2d 73, 47 A.L.R.2d 291].) In any event, since,

as we have indicated, a new hearing should be ordered in this case, that hearing will provide the adversary and evidentiary characteristics which appellants say are necessary for procedural fairness.

3. Should a jury trial be held on the issues raised by appellants' objections?

Appellants assert the denial of their requests for a jury trial as a ground for reversal. Determination of this point is not necessary to the disposition of this appeal, but we discuss it because the question may arise in future proceedings in the case. (See Code Civ. Proc., § 43.) ■ It has long been the rule that there is no right to a jury trial in probate proceedings unless the statute governing the proceedings expressly grants that right or expressly authorizes the formation of factual issues to be tried. (*Estate of Van Deusen* (1947) 30 Cal.2d 285, 291 [182 P.2d 565]; *Estate of Perkins* (1943) 21 Cal.2d 561, 567 [134 P.2d 231]; 4 Witkin, Cal. Procedure (2d ed. 1971) Trial, § 79, pp. 2913-2914.) No jury trial right exists in a proceeding to settle a testamentary trustee's account brought pursuant to section 1120.

In *Estate of Beach* (1975) 15 Cal.3d 623 [125 Cal.Rptr. 570, 542 P.2d 994], it was held that persons contesting the settlement of an *executor's* account pursuant to section 927 had no right to a jury trial on the factual issues raised in the proceeding, which claims were based on the alleged negligence of the executor in supervising investments. (*Id.,* at pp. 642-643.) One of a line of old cases principally relied on in *Beach* involved the settlement of an account of a *testamentary trustee.* (*Estate of Smead* (1938) 12 Cal.2d 20, 25 [82 P.2d 182]; see *Estate of England* (1931) 214 Cal. 298, 300 [5 P.2d 428].) Moreover, the *Beach* court said that the proceeding to settle an executor's account should be committed for determination to the probate court alone, due to that court's special role in directing and supervising the conduct of executors. (*Estate of Beach, supra,* 15 Cal.3d 623, 643.) The same reasoning is applicable to an action to settle a trustee's account. It has also been recognized that a jury trial is impractical in cases involving the settlement of large and detailed accounts. (*In re Moore* (1887) 72 Cal. 335 [13 P. 880], cited in *Estate of Beach, supra.*)

B. Did the probate court err in granting respondent Brannen's petition for fees and costs?

1. Did the court have the power to entertain the petition?

In discussing this point it is important to note that the order approving Brannen's fees was entered on his petition, rather than on that of the trustees. ■ We find no authority, nor has any been cited, which allows an attorney for trustees to petition directly for his own fees. It is true that a probate court, as an incident of its jurisdiction to settle the accounts of a *testamentary trustee,* has the power to make an award of fees directly to the trustee's attorney. (*Estate of Lair* (1945) 70 Cal.App.2d 330, 335 [161 P.2d 288]; 7 Witkin, Summary of Cal. Law (8th ed. 1974) Wills and Probate, § 366, pp. 5836-5837.) But, a probate court is a court of limited jurisdiction and may exercise only those powers expressly conferred upon it or incidental thereto. (*Estate of Bissinger, supra,* 60 Cal.2d 756, 764; *Estate of Schloss* (1961) 56 Cal.2d 248, 253 [14 Cal.Rptr. 643, 363 P.2d 875].)

Brannen relies on section 911 as authorizing him to file his own petition.[4] We regard the section as inapplicable. It permits an attorney to petition for an allowance on fees in advance of a final award, and is limited by its terms to attorneys for executors or administrators.

On remand, the trial court will have the power to award fees and costs upon consideration of the petition of the trustees.

> 2. Did the court have the power to enter an order affecting the property interests of the owners?

Contrary to the assertion of appellants, the Brannen order did not run to the owners and is not in the form of a judgment against them. Nonetheless, it affects their substantial property interests. The order determined that the *trustees* were liable for the fees, but provided further that the trustees' liability would be discharged proportionately from the five remaining testamentary trusts and from income received by the trustees from the Ione Ranch on behalf of the nontrustee owners. The trustees were awarded a lien against such income for that purpose.

Insofar as the owners are concerned, although some of them were apparently beneficiaries of other trusts or former beneficiaries seeking to

---

[4]Probate Code section 911 reads as follows: "Any attorney who has rendered services to an executor or administrator, at any time after four months from the issuance of letters testamentary or of administration, and upon such notice to the executor or administrator and to the persons interested in the estate as the court or a judge thereof shall require, may apply to the court for an allowance upon his fees: and on the hearing the court shall make an order requiring the executor or administrator to pay such attorney out of the estate such compensation, on account of services rendered up to that time, as the court shall deem proper, and such payment shall be made forthwith."

reopen accounts previously settled, they were no longer beneficiaries in their capacities as owners. A proceeding under section 1120 extends to issues arising between testamentary trustees and beneficiaries. (*Estate of Bissinger, supra,* 60 Cal.2d 756, 765; *Triplett* v. *Williams* (1969) 269 Cal.App.2d 135, 139 [74 Cal.Rptr. 594].)

Brannen points out that his services benefitted the owners, or their property interests, and asserts that he has valid claims for reimbursement of the cost of those services based on contract or the law relating to the rights of cotenants. He relies strongly on the claim that his services were specially contracted for by the trustees with the consent and agreement of the owners. If the trial court impliedly so found, such finding is not supported by any evidence since, as we have pointed out, no hearing upon the question was held. The interests of the owners in the Ione Ranch were no longer trust property, and thus had ceased to be subject to probate jurisdiction. (See 7 Witkin, Summary of Cal. Law (8th ed. 1974) Wills and Probate, § 237, p. 5745.) ■ The claims of Brannen should be heard, if at all, by the superior court in the exercise of its general jurisdiction and not by the court sitting in probate.

Brannen asserts that the rule just referred to does not apply to persons who are in privity with an estate. He refers to cases which hold that one who acquires property involved in the course of probate proceedings is in privity with the estate. (See, e.g., *Estate of Hoefflin* (1959) 176 Cal.App.2d 619, 631 [1 Cal.Rptr. 642].) This, no doubt, is the general rule. But, as Witkin points out, the general rule, along with its exceptions, was abrogated in 1972 when section 851.5 was amended so as to create probate jurisdiction over so-called strangers in certain situations not present here. (7 Witkin, Summary of Cal. Law (8th ed. 1974) Wills and Probate, § 243, p. 5750.) Hence, Brannen's attempt to invoke the exception described above fails.

Brannen next argues that the owners necessarily waived any objections to the jurisdiction of the probate court when they voluntarily entered appearances after he filed his petition for fees. However, the limitation on jurisdiction here at issue is one of the probate court's subject matter jurisdiction. (See *Estate of Bissinger, supra,* 60 Cal.2d 756, 764; 7 Witkin, Summary of Cal. Law (8th ed. 1974) Wills and Probate, § 234, p. 5742.) It is axiomatic that jurisdiction of the subject matter, unlike jurisdiction of the parties personally, cannot be conferred by waiver. (*Sampsell* v. *Superior Court* (1948) 32 Cal.2d 763, 773 [197 P.2d 739]; 1 Witkin, Cal. Procedure (2d ed. 1970) Jurisdiction, § 10, p. 534.)

3. Were appellants denied a fair hearing?

All appellants assert that they should have been afforded a hearing on the claim for Brannen's fees. As we have stated heretofore, such a hearing should be held. (See discussion under A-2 and B-1 above.)

The decrees and order appealed from are reversed. Other relief requested by appellants is denied.

Caldecott, P. J., and Rattigan, J., concurred