1997 ND 19

In the Matter of the Administration by Ralph MANGNALL, Trustee, of the George and Mary Adams Trust Dated March 15, 1985.

Ralph MANGNALL, Petitioner
and Appellant,

v.

Ronald Joseph ADAMS, Respondent
and Appellee.

Civil No. 960133.

Supreme Court of North Dakota.

Feb. 12, 1997.

Mark G. Schneider (argued), of Schneider, Schneider & Schneider, Fargo, for petitioner and appellant.

Ronald J. Weikum (argued), Elgin, for respondent and appellee.

Michael F. Daley, Grand Forks, for amicus curiae First National Bank ND. Submitted on brief.

NEUMANN, Justice.

[¶ 1] Ralph Mangnall, the former trustee of the George and Mary Adams Trust (Trust), appeals from a judgment entered in the supervised administration of the Trust. We hold the district court should have decided issues involving Mangnall's liability to the Trust in this action, and we remand for further proceedings.

[¶ 2] On March 15, 1985, George and Mary Adams established the Trust, naming their attorney, Daniel Diemert, as trustee. The Trust also nominated Diemert as guardian and conservator if the trustors, or the surviving trustor, became incapacitated. The Trust identified the Trust property as $10,000 and three quarter sections of land in Dickey County. The Trust gave the trustee "sole and absolute discretion" to "sell and convey any of the trust property or any interest in it, or to exchange the same for other property, for such price or prices and upon such terms as in his discretion and judgment may be deemed for the best interest of the trust and the beneficiary."

[¶ 3] The Trust required the trustee to pay the trustors the net income from the Trust during their lifetime and allowed the trustors unilaterally to withdraw up to $5,000 per year from the Trust principal. The Trust also allowed the trustors, with consent of the trustee, to withdraw up to $20,000 per year from the Trust principal, provided such a withdrawal would not require the mortgage, sale, or other disposition of any real property.

[¶ 4] The Trust established a "post-mortem trust term" after the death of the surviving trustor, during which the trustee was required to pay $500 per month to the Adams' grandson, Ronald Joseph Adams. At the end of the post-mortem term, the Trust required the trustee to convey each of the quarter sections of land to three different beneficiaries. Ronald Joseph Adams was one of those beneficiaries and was also the residuary beneficiary of the Trust.

[¶ 5] In April 1988, a Dickey County judge appointed Mangnall to succeed Diemert as trustee. At that time, Mary Adams was the surviving trustor of the Trust. In November 1989, the same Dickey County judge found Mary Adams was incapacitated and appointed Mangnall as her guardian under N.D.C.C. § 30.1–28–11(3)(a).

[¶ 6] In May 1993, the real property in the Trust was appraised at $144,000. In June 1993, Mangnall sold the real property for $120,000 to Mary Adams' daughter and son-in-law, Margaret and Robert Larson. As part of the transaction, Mangnall also paid over to the Larsons more than $5,000 in rent which the Trust had received for the land in March 1993.

[¶ 7] In 1993 and 1994 Mangnall used about $80,000 in Trust funds for nursing home expenses for Mary Adams. She died in June 1994, and Mangnall subsequently petitioned the district court for supervised administration of the Trust. Mangnall asked to resign as trustee and sought appointment of a successor trustee. Mangnall also asked the court to accept his accounting and to "discharge [him] from any and all further duties or responsibilities as trustee." Ronald Joseph Adams objected to Mangnall's petition, alleging Mangnall breached his fiduciary duty in selling the real property and in disbursing Trust funds to Mary Adams in excess of amounts authorized by the Trust. Adams objected to the discharge of Mangnall as trustee and sought to hold him "liable for damages for losses to the beneficiaries caused by a breach ... of his fiduciary duties."

[¶ 8] In February 1995, the district court ordered supervision of the Trust. At a May 1995 hearing, the court said:

> "I had one thought in my mind and I really don't know that this is the place at which to make any claims against a trustee for breach of fiduciary duties. I think that

would have to be started by a separate action. Probably could be included in this proceeding, maybe it would have to be filed in a separately—in a separate case, I am not sure. But I am not here to determine that, as far as I can tell, except insofar as it may be relevant to the presentation of the trustee's reports and those sorts of things."

[¶ 9] In June 1995, the court appointed First National Bank North Dakota as the successor trustee. After further hearings in July and August 1995, the court decided Mangnall's sale of the land "at 83% of the appraised value with a rebate of rent to the purchasers [was] just too sweet a deal to be acceptable." The court concluded that, although Mangnall may have had strong moral grounds to take care of Mary Adams in his capacity as guardian, the Trust did not authorize him to use Trust funds for that purpose. The court accepted Mangnall's accounting as an "accurate description of what happened in the trust estate and the conservatorship." The court concluded, however, it was "not here to fix liability, if any exists, between the trustee and the trust estate" and refused to release Mangnall from any liability resulting from the accounting. The court also directed Mangnall to reimburse the Trust for some attorney's fees and expenses incurred by him. Mangnall appeals.

[¶ 10] Mangnall asserts he is not liable for breach of his fiduciary duty as trustee, because he exercised his guardianship duties in the best interests of Mary Adams. Mangnall contends the trial court should have found Ronald Joseph Adams waived any objections regarding Mangnall's actions as trustee, because Adams knew Mangnall's actions as Mary Adams' guardian would adversely affect the interests of the Trust beneficiaries. Those issues involve Mangnall's dual capacity as trustee and guardian and his potential liability to the Trust.

[¶ 11] Unless a trust provides otherwise, a trustee's primary obligation is as a fiduciary to administer the trust for the benefit of the beneficiaries. *See* N.D.C.C. §§ 59–01–09 et seq.; 59–04–15; and Ch. 30.1–34. *See generally* 76 Am.Jur.2d *Trusts* § 365 et seq. (1992). A guardian or conservator is also a fiduciary who owes a high degree of good faith to the ward or protected person, the estate of the ward or protected person, and other persons interested in the estate. *See Thompson v. First Nat'l Bank in Grand Forks,* 269 N.W.2d 763, 764 (N.D. 1978); N.D.C.C. §§ 30.1–28–12; 30.1–29–17; 30.1–29–25. *See generally* 39 Am.Jur.2d *Guardian and Ward* § 61 et seq. (1968).

[¶ 12] Here, Mangnall's dual capacity as trustee and guardian created an inherent conflict in his obligations to the Trust and to the guardianship.[1] Although Adams has not cross-appealed from the trial court's refusal to decide Mangnall's liability to the Trust, Mangnall's waiver argument is inextricably linked to issues about his dual capacity and his potential liability to the Trust. The current trustee, First National, has filed an amicus brief in this court contending the trial court's limited ruling does not bar a subsequent proceeding against Mangnall to establish his liability to the Trust.

[¶ 13] Ordinarily, res judicata or claim preclusion prohibits the relitigation of claims or issues which were raised, or could have been raised, in a prior action between the same parties or their privies and which were resolved by final judgment. *Chapman v. Wells,* 557 N.W.2d 725, 728 (N.D.1996). If, however, in rendering a judgment, a trial court expressly reserves a party's right to maintain another claim, the judgment is not res judicata as to the reserved claim. *Cokins v. Frandsen,* 141 N.W.2d 796, 799 (N.D. 1966). *See* Restatement (Second) of Judgments § 26(1)(b) (1982).

---

1. The tension between the obligations imposed by Mangnall's dual capacities is colored by the possible availability of the Trust assets for nursing home care for Mary Adams. *See Allen v. Wessman,* 542 N.W.2d 748, 754 (N.D.1996) (trust was Medicaid qualifying trust and all trust assets were therefore deemed available for purposes of eligibility for Medicaid benefits). This record shows Mangnall inquired of the Department of Human Services about the availability of the Trust assets for determining Mary Adams' eligibility for Medicaid benefits. However, the trial court did not decide the extent to which trust assets were available to pay for the care of Mary Adams.

[¶ 14] In *Matter of Estate of Howard,* 58 Cal.App.3d 250, 129 Cal.Rptr. 836, 840–41 (1976), the California Court of Appeals considered an analogous issue in the context of the administration of testamentary trusts. In *Howard,* a probate court had found the trustees' accounting in order, but said disputes about the propriety of the trustees' actions could be subject to other litigation. The appellate court recognized that, under California law, the scope of a proceeding for settling accounts included virtually all controversies that might arise between trustees and beneficiaries, including matters of trustee misconduct. The appellate court said the probate court's reservation of the issue of trustee misconduct was not res judicata on that issue, but held:

> "The determination that the accounts were in order 'accounting wise' may well have been made inaccurate by the court's failure to consider the evidence of trustee misconduct. Losses sustained by a trust as the result of trustee misconduct should be considered in determining the adequacy of an account rendered by the trustee.... Hence, the evidence considered by the probate court was incomplete and was therefore insufficient to support even the court's limited finding that the disputed accounts were in order 'accounting wise', in the absence of a consideration of all the evidence."

*Howard,* 129 Cal.Rptr. at 841 (citations omitted).

[¶ 15] Title 59, N.D.C.C., and part of Title 30.1, Chapters 30.1–32 through 30.1–34, N.D.C.C., outline statutory provisions for Trusts. Another part of Title 30.1, Chapters 30.1–25 through 30.1–30, N.D.C.C., generally outline statutory provisions for guardianships and conservatorships. A district court has jurisdiction over trust, guardianship, and conservatorship proceedings. *See* N.D.C.C. §§ 27–05–06 (jurisdiction of district courts); 30.1–02–02 (district court jurisdiction of guardianships and trusts); 30.1–33–01 (district court jurisdiction of trusts); 30.1–33–04 (district court jurisdiction of litigation involving trusts and third parties); 59–04–02 (supervised administration of trusts in district court). *Cf. Matter of Estate of Binder,* 366 N.W.2d 454, 455–58 (N.D.1985) (decided before elimination of county courts; discussing district and county court jurisdiction over equitable claims involving trusts); *Matter of Bo,* 365 N.W.2d 847, 850–51 (N.D.1985) (involving consolidated appeals from county court conservatorship and district court trust proceedings).

[¶ 16] Section 30.1–34–06(4), N.D.C.C., says "[t]he question of liability as between the trust estate and the trustee individually may be determined in a proceeding for accounting, surcharge, or indemnification, or other appropriate proceeding." When construed in conjunction with Title 59 on Trusts, N.D.C.C. § 30.1–34–06(4), expressly allows a district court, in an accounting or other appropriate proceeding, to decide a trustee's personal liability to the trust estate for breach of a fiduciary duty. The scope of a district court's authority under N.D.C.C. § 30.1–34–06(4) is broad enough for the court to decide all of a trustee's liabilities and responsibilities to the trust, and related guardianship matters, in a single, supervised administration proceeding.

[¶ 17] Here, the issues about the supervised administration of the Trust and Mangnall's potential liability to the Trust are inextricably interwoven with Mangnall's guardianship obligations. *Cf. Matter of Bo,* 365 N.W.2d at 850 (where parties stipulated to consolidate timely appeal from district court trust proceeding and premature appeal from county court conservatorship proceeding, supreme court had jurisdiction to decide guardianship issues inextricably entwined with trust issues). The Trust document explicitly recognized the same person could serve as both trustee and guardian, and the same county judge appointed Mangnall to both positions. Mangnall petitioned the district court to discharge him from any and all further duties and responsibilities as trustee, and Adams asked the court to hold Mangnall liable for damages caused by a breach of his fiduciary duties. Their pleadings effectively asked the court to decide all issues pertaining to Mangnall's liabilities and responsibilities as trustee, and a successor trustee was appointed while these proceedings were pending.

[¶ 18] We generally discourage piecemeal litigation. *See, e.g., Union State Bank v.*

*Woell,* 357 N.W.2d 234, 237 (N.D.1984) (N.D.R.Civ.P. 54(b) intended to avoid piecemeal appeals). Under these circumstances, a complete account of Mangnall's trustee responsibilities necessarily included the resolution of his liabilities, if any, to the Trust and his guardianship responsibilities. *See Howard,* 129 Cal.Rptr. at 841. In this posture, we believe the district court should have decided all of the issues raised by the parties regarding Mangnall's liabilities and responsibilities to the Trust and to Mary Adams in one proceeding.

[¶ 19] Because the inherent conflict in Mangnall's dual capacities as trustee and guardian are so inextricably intertwined with his waiver argument, with his potential liability, if any, to the trust, and with the question of the propriety of his actions as both guardian and trustee, we remand to the district court for retrial in light of this decision.

[¶ 20] VANDE WALLE, C.J., and MARING, MESCHKE and SANDSTROM, JJ., concur.

MESCHKE, Justice, concurring.

[¶ 21] Although this case came to us on the appeal by the trustee-guardian on a number of questions, I agree that we must remand for a new trial on all the possible questions because all are intertwined.

[¶ 22] I worry whether some of our remand should be phrased differently because I fear how we say what we are not deciding might be confusing. It is my understanding that, other than our conclusion that the trial court should have decided all issues raised by the parties in one proceeding, we are deciding virtually nothing else about this case, and the trial court's prior findings are all open for redetermination.

[¶ 23] I am also apprehensive that the references to "the inherent conflict in Mangnall's dual capacities as trustee and guardian" and "the question of the propriety of his actions" in the last paragraph of the lead opinion in this case may mislead the trial court to think that we are condemning Mangnall's conduct as improper. I do not believe we are, and I hope everyone recognizes the importance of the references to the facts that "[t]he Trust document explicitly recognized the same person could serve as both trustee

and guardian, and the same county judge appointed Mangnall to both positions."

[¶ 24] I am equally apprehensive that someone may think that the conclusion in footnote 1, that "the trial court did not decide the extent to which trust assets were available to pay for the care of Mary Adams," casts doubt on whether this trust may be a "medicaid qualifying trust" under *Allen v. Wessman,* 542 N.W.2d 748 (N.D.1996). The trial court's main memorandum decision in this case was entered on December 29, 1995, before *Allen v. Wessman* was decided, and the formal findings, conclusions, and order for judgment were prepared very soon after that decision. Therefore, I believe this remand of the entire case for a new trial is particularly appropriate to fully develop the concept of a medicaid qualifying trust here.

> Under this congressional directive for Medicaid eligibility, trust assets are "deemed available" when a trustee has any discretion to distribute them to the settlor despite the purpose of the trust, its irrevocability, or the actual exercise of discretion.

*Allen v. Wessman,* 542 N.W.2d at 752. If this trust was a medicaid qualifying trust, it seems to me very doubtful whether the use of trust funds by the trustee-guardian for the necessary care of the surviving settlor and primary beneficiary can be a breach of trust.