[Civ. No. 4001. Fourth Dist. Mar. 3, 1950.]

CLAUDE R. FOOSHE et al., Respondents, v. T. R. SUN-SHINE et al., Defendants; A. W. FOSTER, Appellant.

Laurence B. Myers, E. O. Leake and J. J. Leake for Appellant.

John G. Sobieski for Respondents.

GRIFFIN, J.—Plaintiff Claude R. Fooshe and his wife instituted this action against T. R. Sunshine, John Curci, L. A. Turner, A. W. Foster, and Growers Acceptance Association, a copartnership, for rescission of a sale or for damages, in connection with the purchase by plaintiffs from defendants Sunshine, Curci and Turner, of certain farming lands located in the west side of Fresno County. At the time of the sale to plaintiffs, appellant Foster was a farming superintendent for the sellers. About that time Foster entered into a partnership agreement with plaintiff Fooshe under the partnership name of "Mountain View Farms," for the purpose of farming these lands. That partnership entered into a lease of the lands from Fooshe and his wife.

Appellant Foster, individually and on behalf of the partnership, filed a cross-complaint against Fooshe and his wife for damages, for dissolution of the copartnership and for an accounting.

The trial of the case resulted in judgment in favor of defendants on the complaint of plaintiffs. On the cross-complaint the court denied damages to cross-complainants but ordered a dissolution of the copartnership and an accounting. Judgment was entered in favor of defendants on the original complaint about February 6, 1947. It specifically provided that the Mountain View Farms, a copartnership, ''be and the same is hereby dissolved,'' and left the matter of accounting and subsequent judgment thereon for further action by the court. This judgment also appointed a referee to take an accounting of the partnership affairs up to February 6, 1947. On May 22, 1948, the referee, after examining the accounts, the partnership agreement, the books of the partnership, and after a full hearing in reference thereto, filed with the court his report consisting of findings of fact and conclusions of law. The court subsequently approved and adopted the referee's report as its findings and made certain additional findings respecting Foster's petition to dismiss the proceedings by reason of his claimed discharge in bankruptcy. The judgment based thereon, among other things, provided that the partnership of the two men was indebted to plaintiff Fooshe in a large sum on account of money advanced to the partnership by Fooshe and not repaid. The court also found that Foster's personal liability for any sum over $3,153.04 should be stayed because of Foster's voluntary bankruptcy. The court then finally gave judgment for plaintiffs against Foster on January 1, 1949, in the sum of $3,153.04. This sum was 60 per cent of certain partnership funds which the court found Foster secretly and fraudulently misappropriated to his own use after the partnership had been declared dissolved and after the partnership operations ceased. It is from this final judgment that defendant Foster appeals.

It should be here noted that subsequent to the entry of the original judgment on plaintiff's complaint, which was entered on February 6, 1947, and after the appointment of a referee to take an accounting of the partnership affairs but prior to the entry of the final judgment following the partnership accounting, Foster was adjudicated a bankrupt. On May 21, 1948, he received his discharge in bankruptcy. On July 6, 1948, he filed his petition to stay proceedings in this action on account of said discharge in bankruptcy. The court granted this petition in part and denied it in part, staying the liability except as to the sum of $3,153.04.

The evidence, according to the findings, may be thus sum-

marized: In March, 1944, Fooshe and Foster entered into the partnership agreement to conduct the farming operations. Fooshe contributed $57,300 in cash to the partnership and received from the partnership sums totaling $29,354.79, so that the excess of his cash contribution over repayments was $27,945.21. Foster contributed no cash or property to the partnership venture. There were no profits. The partnership operated at a loss. It likewise had no assets. In addition to the sums owed Fooshe on account of his capital contributions, the partnership owed $12,405.39 to Mr. and Mrs. Fooshe for renting their land to the partnership, no part of which rental was paid. The partnership farming operation ceased in May, 1945, which was about a year after the partnership was formed. All of these farming operations were under the direction of Foster who, under the partnership agreement, was entitled to a salary of $250 per month, plus an advance of $150 per month against expected profits, on condition that he should render full-time service and devote his full attention to the affairs of the partnership. It was the obvious arrangement that Fooshe should furnish the capital and that Foster should furnish operating skill and full-time services. On February 15, 1945, the Fooshes served a notice of rescission with respect to the real property they had purchased and later leased to the partnership. On May 31, 1945, they commenced the present action against Foster and the others above mentioned for rescission of the sale or for damages. It was Fooshe's belief that he had been fraudulently misled by Foster and the others in the purchase of the land. The trial court found against plaintiffs on this issue. The referee heard the evidence as to the accounting and found that the partnership ceased operations in *May, 1945*; that the partners then mutually agreed that the farming operations would immediately cease except for the gathering of the grain harvest; that Foster receive no salary or remuneration subsequent to June, 1945; and found that Foster did not devote any substantial service or attention to partnership affairs after May, 1945. The referee then found that although farming operations had ceased and Foster was devoting no substantial time to partnership affairs, Foster did, commencing in November, 1945, secretly withdraw for his own personal use, partnership funds under his control in the total amount of $5,255.06, and that these withdrawals were made "without the knowledge or consent of Claude R. Fooshe, and were concealed from him." It is shown that Foster shifted the partnership bank account

to a bank unknown to Fooshe; that Foster and his lawyer, who had possession of the partnership records, would not allow Fooshe or his attorney to inspect them and would not permit the referee to see the partnership books until an order was obtained from the court requiring the books to be turned over to the referee; that in March, 1948, for the first time, Fooshe learned that Foster, the defaulting bankrupt, had, after the court had ordered the partnership dissolved, taken for himself and for his attorney, every cent of partnership funds remaining in his hands.

It is appellant's contention that his entire debt, including the claim merged in this judgment, was discharged in bankruptcy; that his motion to stay proceedings should have been granted. Exception is taken to the finding of the referee and the court that Foster's liability for such withdrawals was a liability for obtaining money by false pretenses and false representations, for willful and malicious injury to the property of another, and was a liability created by his fraud, misappropriation and defalcation while acting in a fiduciary capacity, and that *at the time of the misappropriations* Foster owed a fiduciary duty to Fooshe and was therefore liable to him for 60 per cent of said sums or $3,153.04.

Respondents contend that Foster's cash withdrawals of partnership funds to his own personal use *after partnership operations ceased* were the wrongful and secret taking of funds to which he had no moral or legal right, and that his liability therefore was not dischargeable in bankruptcy under Section 17 of the Bankruptcy Act (30 Stats. 550, 11 U.S.C.A. § 35.) That section provides in part:

"Debts not affected by a discharge. A discharge in bankruptcy shall release a bankrupt from all of his provable debts, except . . . (second) . . . liabilities for obtaining property by false pretenses or false representations or for willful and malicious injuries to the person or property of another, . . . or (fourth) were created by his fraud, embezzlement, misappropriation, or defalcation while acting as an officer or in any fiduciary capacity; . . . ."

Many cases are cited by appellant showing that the general rule is that misappropriation by a partner of partnership funds is not a misappropriation by him while acting in a "fiduciary capacity" within the meaning of the section excepting certain debts from the effect of a discharge in bankruptcy, and that while a partnership contract implies trust and confidence, a partner, *during the existence of the partner-*

*ship,* does not, by reason of that relation, while managing the funds and the business of the firm, act in a "fiduciary capacity," as understood in the bankruptcy law. (*Martin* v. *Starrett,* 97 Neb. 653 [151 N.W. 154, 155]; *Karger* v. *Orth,* 116 Minn. 124 [133 N.W. 471]; *Chapman* v. *Forsyth,* 2 How. (U.S.) 202 [11 L.Ed. 236]; *Barrett* v. *Prince,* 143 F. 302 [74 C.C.A. 440]; *In re Camelo,* 195 F. 632; *Harrington & Goodman* v. *Herman,* 172 Mo. 344 [72 S.W. 546, 60 L.R.A. 885]; *Gee* v. *Gee,* 84 Minn. 384 [87 N.W. 1116]; *Pierce* v. *Shippee,* 90 Ill. 371; *Inge* v. *Stillwell,* 88 Kan. 33 [127 P. 527, 42 L.R.A.N.S. 1093]; *Stephens* v. *Milikin,* 35 Ga.App. 287 [133 S.E. 67]; 8 C.J.S. § 578e, p. 1542.)

42 Lawyers Report Annotated N.S. 1093 [note] recites the generally adopted rule and states:

"There has been considerable diversity of opinion under the various bankruptcy acts as to what relations are fiduciary under the provisions of the acts, excepting debts created while acting in a 'fiduciary capacity' from those discharged, but the principles applicable to a determination of that question are now well settled.

"In the first place, it is the generally accepted rule under all of the acts that the term 'fiduciary capacity' relates to special, technical, or express trusts, and not to those trusts which the law implies from the contract between the parties."

Respondent's argument is that the relationship between partners is fiduciary, citing section 2415, subdivision 1, Civil Code; *Nelson* v. *Abraham,* 29 Cal.2d 745, 750 [177 P.2d 931]; *Perelli-Minetti* v. *Lawson,* 205 Cal. 642, 647 [272 P. 573]; *MacIsaac* v. *Pozzo,* 26 Cal.2d 809, 813 [161 P.2d 449]; *Moropoulos* v. *C. H. & O. B. Fuller Co.,* 186 Cal. 679, 684 [200 P. 601]; *Laughlin* v. *Haberfelde,* 72 Cal.App.2d 780, 788 [165 P.2d 544]; and *Universal Sales Corp.* v. *California etc. Mfg. Co.,* 20 Cal.2d 751, 772 [128 P.2d 665]. It is then contended that in view of the statutory provision and the cited cases, the general rule above cited by appellant ought not to be followed in California since under section 2415, *supra,* one partner is accountable as a fiduciary, and that decisions of sister states and the results of those decisions "appear to be counter to the spirit and letter" of section 17, subdivision 4 of the Bankruptcy Act.

This question was touched upon in *Marlenee* v. *Warkentin,* 71 Cal.App.2d 177 [162 P.2d 321]. That was an action on a judgment obtained against the defendant who wrongfully

appropriated and converted to his own use the interest of plaintiff's deceased husband in a partnership and the property thereof and thereby injured and defrauded his estate and the persons entitled thereto. Appellant there urged that the original action was not based on any alleged tort but was purely one of partnership accounting and it therefore could not support a judgment "for conversion or willful and malicious injuries to the person or property of another." The court there found that the defendant had wrongfully and unlawfully appropriated and converted to his own personal use said decedent's nine-tenth interest in said partnership. This finding was apparently upon the theory that the appropriation was made after the death of the partner and that the partnership was discharged upon the death of one of the partners (Corp. Code, § 15031, subd. 4) and that any wrongful appropriation thereafter made was an appropriation from the estate of the partner. It then held that section 17 was applicable as constituting a "willful and malicious injury" to the property of another. The amount of that appropriation was exempted from the debts claimed to have been discharged by the bankruptcy proceeding.

It appears to us that this case is determinative of the question before us. Here it clearly appears that at the time the first judgment was obtained the court specifically declared in that judgment dated February 6, 1947, which became final, that the Mountain View Farms, a copartnership, "is hereby dissolved." So at the time the appropriation herein mentioned was made the partnership had been dissolved. (Corp. Code, § 15031, subd. (6).) The assets of the partnership were then being held subject to the order of the court until an accounting was had under its directions. Any misappropriation made of those assets by the appellant Foster subsequent to the time of the dissolution was clearly "a willful and malicious injury to the property of another," within the meaning of section 17 of the Bankruptcy Act.

In *Lyon* v. *Prescott*, 103 Vt. 442 [156 A. 679], there was a partnership, between two men, which *had been dissolved*. Lyon collected and appropriated to his own use sums of money which belonged to the firm. Lyon later received a discharge in bankruptcy. On the question of whether the claim was cut off by the discharge in bankruptcy the Vermont Supreme Court held:

"We need not pause to inquire whether this claim would survive as a misappropriation of a fiduciary under section 17

of the Bankruptcy Act . . . for it is plain enough that it is saved by the provision of that section exempting debts which are 'liabilities . . . for willful and malicious injuries to the . . . property' of another. Within the meaning of this provision, the money which Lyon misappropriated was the property of the firm and not his own. It appears that he converted these funds deliberately. Neither Prescott nor the receiver consented to or ratified the misappropriation. It was willful and malicious, as expressly found."

In *In re Frazzetta,* 1 F.Supp. 122, the District Court in New York held a bankruptcy discharge unavailing to a partner who had converted partnership funds following dissolution. The court said:

". . . the bankrupt failed to make any satisfactory accounting or give any reasonable explanation to the referee for his acts in handling the partnership moneys that came to him after the dissolution . . . One cannot escape the conclusion that he deliberately set out to defraud his partners . . .

"One of the purposes of the Bankruptcy Act . . . is to discharge an honest debtor and not a malicious wrongdoer.

"My conclusion is that the debt is not dischargeable in bankruptcy." (See, also, *Van Epps* v. *Aufdemkamp,* 138 Cal.App. 622 [32 P.2d 1116].)

In *Ruppe* v. *Utter,* 76 Cal.App. 19 [243 P. 715], it was held that the remaining partner, after dissolution, occupies the position of a mere trustee.

The facts found by the court in this case, construed to support the judgment, as under the law they must be, show dissolution of the partnership, in fact, a long time prior to the conversion of the funds by Foster.

Section 2423 of the Civil Code, now section 15029, Corporations Code, provides that the dissolution of a partnership is the change in the relation of the partners caused by any partner ceasing to be associated in the carrying on, as distinguished from the winding up of the business. In accordance with this section it has been directly held that conduct of a partner inconsistent with the continuance of a partnership results in the dissolution of the partnership in spite of the fact that liquidation is not completed or some appearances of the partnership continue. (*Middleton* v. *Newport,* 6 Cal.2d 57, 62 [56 P.2d 508]; *Maryland Casualty Co.* v. *Little,* 102 Cal.App. 205 [282 P. 968]; *Sly* v. *Abbott,* 89 Cal.

App. 209 [264 P. 507] ; *Beck* v. *Cagle,* 46 Cal.App.2d 152, 160 [115 P.2d 613].)

The evidence, as summarized, shows that there was a dissolution of the partnership, at least by June, 1945, which was at least five or six months before the conversions by Foster commenced and the court specifically found that these unauthorized misappropriations occurred after partnership operations ceased. Consequently, if it can be claimed that there is any distinction between conversions by a partner after dissolution and conversions before dissolution, that distinction will not help appellant in this case. The findings clearly support the judgment in this respect.

The remaining argument is that the referee, in making his findings, acted beyond the scope of the order of reference and beyond his jurisdiction and that therefore his finding is a nullity. In addition thereto it is argued that even if the finding is within the scope of the referee's power and jurisdiction that it finds no support in the evidence and therefore must be disregarded.

 This appeal is on the judgment roll. The report of the referee and petition to stay proceedings are all contained within the clerk's transcript on appeal. The court by its interlocutory judgment ordered that a specified referee be appointed to take an accounting of the affairs of the copartnership between specified dates and to report his findings to the court for such further proceedings and judgment as may be proper in the premises. Thereafter, the referee, in pursuance of that order, did take the accounting, and according to that report, notice of the time of the hearing was given. All parties appeared, evidence was introduced consisting of the exhibits, books and records of the company and the matter was submitted. Affidavits were filed in opposition to some of the testimony given by the plaintiff before the referee. Objection was made to the hearing of such affidavits and was sustained. The report recites that the referee, ''being fully advised in the premises, makes and reports the following findings of fact and conclusions of law.'' Then follows, in detail, what appears to be a complete accounting of the book entries, a résumé of the evidence produced and the conclusions reached. By a signed order dated June 24, 1948, the referee's findings were approved. The court ordered counsel for plaintiff to prepare a written judgment in accordance with his order and stated that no findings were necessary ''except that referee's report is approved.'' The final judgment of the court recites that the

findings of fact and conclusions of law set forth in the referee's report were adopted as the findings of fact and conclusions of law of the court as supplemented by further findings and conclusions set forth. No exhibits or record of the proceedings before the referee were produced in this court. There is nothing in the record showing that any relevant evidence tendered by appellant was excluded by the referee or by the court. When the motion to approve the referee's report was made and argued before the court appellant tendered no additional evidence. The referee's findings became the court's findings and properly support the judgment. (*Rodehaver* v. *Mankel,* 16 Cal.App.2d 597, 605 [61 P.2d 61]; *Erwing* v. *Jones,* 69 Cal.App.2d 97, 99 [158 P.2d 265].)

▋ It is claimed that the order of reference was made under section 639, subdivision 1 of the Code of Civil Procedure and not under section 638, subdivision 1 of the Code of Civil Procedure and that therefore the order did not give authority to the referee "to decide the whole issue," but that the referee was limited to the taking of an accounting only. In support of this argument appellant cites 53 Corpus Juris 714, section 103; *Williams* v. *Benton,* 24 Cal. 424; and *National Brass Works* v. *Weeks,* 92 Cal.App. 318 [268 P. 412].

The holding under those cases is that under section 638, subdivision 1, the court is authorized to order the referee to try any and all issues whether of law or of fact, in the action or proceeding, to report findings and judgment thereon subject to the power of the court to reject or confirm his report. Under this section a reference may be ordered only upon the agreement of the parties. Under section 639, subdivision 1, *supra,* the court may direct a reference when the trial of an issue of fact requires the examination of a long account on either side, in which case the referee may be directed to hear and determine the whole issue (pertaining to the account) or report upon any specified question of fact involved therein. (*Fredendall* v. *Shrader,* 45 Cal.App. 719 [188 P. 580]; *Williams* v. *Benton, supra.*)

While it might appear from a reading of some of the findings of the referee that such findings did not apply strictly to the question of the accounting, it cannot be said, as a matter of fact or law, that the findings made were not necessary to a full "accounting of the partnership affairs." The partnership agreement could not be ignored in the reference. It was an instrument necessary to be considered by the referee

in making the necessary computation as to the obligations of each of the parties and of the capital that was furnished or to be furnished by the parties, the amounts withdrawn from the business as wages or salary, as well as the question as to whether the partnership had been operated at a profit or a loss. In the accounting it was necessary to know when the actual operations of the partnership ceased since Foster was only entitled to compensation for full time service. The real purpose of the reference was to determine these questions as well as the amount of money remaining in the hands of the court for distribution to the former partners. The amount of the misappropriation by appellant, after the dissolution and after the date of the order for an accounting, was material and was one of the main issues involved in this appeal. This fact was properly reported to the court under its general order for an accounting by the referee, and was one of the real questions about which the court was here concerned. We conclude that from the record on this appeal and the showing here made in reference to this issue the findings reported are sufficient and substantially comply with the reference ''to take an accounting of the partnership affairs.''

Judgment affirmed.

Barnard, P. J., and Mussell, J., concurred.