[No. D007745. Fourth Dist., Div. One. Oct. 11, 1988.]

UNITED STATES FIDELITY AND GUARANTY COMPANY, Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
GAR C. MAY et al., Real Parties in Interest.

[No. D008099. Fourth Dist., Div. One. Oct. 11, 1988.]

GAR C. MAY et al., Petitioners, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
OHIO CASUALTY INSURANCE COMPANY et al., Real Parties in
Interest.

1514

COUNSEL

Parkinson, Wolf, Lazar & Leo, Michael W. Connally, Christine T. Hoeffner and Catherine M. McEvilly for Petitioner in D007745 and Real Party in Interest in D008099.

Alan Arnold, Marc I. Kent, William H. Waysman and Sandra Stanley for Petitioners in D008099 and Real Parties in Interest in D007745.

Richards, Watson & Gershon, Erwin E. Adler, Robert C. Ceccon and Beth A. Shenfeld for certain Real Parties in Interest in D008099.

Hufstedtler, Miller, Carlson & Beardsley, Peter O. Israel, Jerome H. Craig, John Sobieski, Thomas M. Brown and Otto M. Kaus as Amici Curiae in support of Petitoner in D007745 and for certain Real Parties in Interest in D008099.

No appearance for Respondents.

## OPINION

**TODD, J.**—In these consolidated proceedings United States Fidelity and Guaranty Company (USF&G) seeks primarily to overturn the *Cumis* decision (*San Diego Federal Credit Union* v. *Cumis Ins. Society, Inc.* (1984) 162 Cal.App.3d 358 [208 Cal.Rptr. 494, 50 A.L.R.4th 913]). USF&G asks that we order the trial court to enter judgment in its favor with respect to two issues in its unsuccessful motion for summary adjudication. USF&G prays for a judgment that it is not required to permit its named insured, Mayzar Realty Inc. (MRI), to select its own *Cumis* counsel, now Marc I. Kent, or to control at USF&G's expense the litigation in San Diego Judicial Council Coordination Proceedings No. 2067 (Coordinated Action) involving multiple claims of fraud, securities violations, and punitive damages against the insured in connection with certain oil and gas investments. USF&G also seeks to require the trial court to enter judgment permitting USF&G to control the defense of the Coordinated Action to the extent USF&G is paying for MRI's defense. (D007745.)

*Cumis* counsel and his clients pursue a writ commanding the trial court to vacate its March 22, 1988, order directing a reference to retired Superior Court Judge Donald W. Smith under Code of Civil Procedure section 639, subdivision (a). The subject of the reference is a long fee billing account of *Cumis* counsel, and the referee is ordered to hear and decide the "whole"

issue of the reasonableness of the attorney's fees and report his recommendations to the trial court. The writ also seeks to vacate the trial court's ruling that *Cumis* counsel and his clients are not entitled to a jury trial on the issues of the reasonableness of attorney's fees and to require it to order a jury trial of that issue. (D008099.)

Recognizing reasonable minds may differ concerning the premise of *Cumis* that for the attorney hired by the insurer, as distinguished from the insurer itself, in certain circumstances involving coverage questions there is a conflict of interest based on considerations of professional ethics, we find no flaw in the *Cumis* reasoning that would support disregarding its precedential value. Moreover, more recent appellate court decisions and the Legislature's enactment of Civil Code section 2860, effective January 1, 1988, refining portions of *Cumis,* furnish an affirmative basis for following the decision. Accordingly, we deny USF&G's writ request in D007745.

Finding the reference of the long account to the referee is an equitable matter to which the right to jury trial does not attach and the "whole issue" encompasses a recommendation of the reasonableness of attorney's fees for the court's later consideration, we deny the relief Kent and his clients seek in D008099.

## FACTS

Initially, it must be emphasized that most of the facts underlying these proceedings have not been determined. Except for the existence of certain procedures and parties involved in those procedures, there is no foundation of facts properly determined on which to cast a judgment. We are presented mostly with pure allegations of fact. Except for clearly uncontroverted or admitted matters, statements in this opinion sounding as if they are presenting or based on properly determined facts should be interpreted as reflecting only the allegations of the participants. Our use of various forms of "allege" is for purposes of emphasis and any absence of its use is not to be construed as having particular significance with respect to the unestablished facts.

USF&G issued a liability insurance policy to MRI for the period November 15, 1985, to November 15, 1986. Gar C. May and Azar May claim to be officers or directors of MRI covered by MRI's policy. Seven other insurers, including Ohio Casualty Insurance Company, issued applicable policies of insurance covering various time periods starting in June 1984 and ending in

December 1986 naming as insureds certain entities and persons connected as defendants in the Coordinated Action.[1]

In 1986 and 1987, the insurers received coverage claims based on numerous lawsuits against MRI, Gar C. May and Azar May. These lawsuits relate to oil and gas investments and contain securities and fraud allegations. Approximately 30 underlying actions led to the Coordinated Action. The insurers accepted various tenders of defense with reservations of rights under their respective policies to deny that any defense or indemnity is owed.[2] In the case of USF&G the reservation of rights is "because certain allegations were not covered under the policy, [USF&G] is barred from providing indemnification as to certain damages, MRI appears to have never existed or been incorporated, and for other reasons."

MRI informed the insurers it had selected Kent as its independent counsel under *Cumis*. USF&G's petition alleges that by the end of August 1987 Kent's bills on the Coordinated Action totaled approximately $1,278,500, and: "4. It was not until the end of November of 1987, by which time Mr. Kent's bills were almost $1,600,000, that petitioner was informed of the amount in controversy, and that Mr. Kent had incurred defense costs of well over two times the amount in controversy. (Ex. pp. 1858-1859.) Petitioner has not yet been informed by Mr. Kent of either an estimated amount for which the Coordinated Action could be settled, or any factual or legal basis for a finding of liability against the named insured on USF&G's policy. The trend of abusive billing has continued since the summary issue adjudication motion was filed. While not technically before the court, it is noteworthy that substantial additional fees have been incurred, and that petitioner has received bills from Mr. Kent exceeding $1,600,000 during the 21-month period ending December 1987, for his representation of the Mays, and by January of 1988, petitioner paid over $126,000 as its portion of Mr. Kent's bills under reservations of rights. This supplemental information is not included in the record because the motion was filed in October, before the above supplemental figures were received.

"5. Mr. Kent's bills include charges for preparing bills, and large expenditures for routine research in addition to a Lake Tahoe trip, limousine service and numerous meals. Mr. Kent's bills also contain the initials of at

---

[1] The other insurers are American Economy Insurance Company, Insurance Company of North America, State Farm Fire and Casualty Company, Charter Oak Fire Insurance Company, Travelers Indemnity Company, and Reliance Insurance Company.

[2] Exhibits C and D in the June 29, 1988, augmentation authorized in D007745 are May 1988 letters reflecting that Travelers Indemnity Company withdrew its reservation of rights except for certain contract damages on cross-complaints and that State Farm Fire and Casualty Company did likewise but then re-reserved its rights.

least 17 attorneys and 25 paralegals in Mr. Kent's offices who have apparently billed time working on the Coordinated Action. With 42 professional staff members in one firm working on the Coordinated Action, serious questions are raised as to Mr. Kent's competence to efficiently and effectively handle litigation of this type. (Ex. pp. 83-84.)

"6. Petitioner has reviewed its records, and finds no reference to USF&G's having retained Mr. Kent's office in the past. Mr. Kent has taken complete control over the Coordinated Action, and petitioner has been unable to control his activities. Petitioner has not received from Mr. Kent, and Mr. Kent refuses to provide, any detailed analysis as to liability, legal research, or facts. MRI, the insured, has failed to make a full and frank disclosure of facts to petitioner, and Mr. Kent has refused to permit petitioner to interview MRI personnel to obtain facts as to the Coordinated Action claims and coverage. (Ex. pp. 84-85.)"

Kent billed the insurers at the hourly rates of $175 for his time, $135 for the time of his associates, $65 for paralegals and $35 for uncertified paralegals. As of August 22, 1987, 17 months after Kent entered the case, *Cumis* counsel bills constituted a stack of paper approximately seven inches thick. According to a declaration of a senior claims representative of USF&G, Kent's bills contained "numerous improper and questionable billing items and amounts for such items as orchids, banquets, limousines, frequent lunches and dinners at prices in excess of $60, hotel bills for luxury hotels in La Jolla (even though Mr. Kent purportedly has an office in La Jolla) and Lake Tahoe, and bills of approximately $32,000 for *preparing* the bills . . . ."

The record contains monthly letter reports from *Cumis* counsel to the insurers, the first of which was dated August 8, 1986, and described the pleadings in four lawsuits, one praying for more than $10 million and three each praying for more than $82 million in damages against the alleged insureds. Generally, in addition to specific information about the pending cases, the monthly report letters included attachments showing pleadings and discovery documents issued by *Cumis* counsel, pleadings and discovery documents served on *Cumis* counsel, dates and places of depositions taken and depositions ·to be taken, all for the relevant reporting period. The November 25, 1987, monthly report letter states an investor loss chart was first created in June 1987. The investor loss chart lists individual data concerning investor plaintiffs in the third party actions and shows filing dates for such actions starting January 29, 1986, and ending June 18, 1987. In the list revised November 20, 1987, the greatest number of individual plaintiffs are shown as having filed their action on June 18, 1987. The

investor loss chart was included as an attachment starting with the October 21, 1987, monthly report letter. As of March 29, 1988, monthly report letters were still being sent to the insurers.

On January 21, 1987, the insurers filed a complaint for declaratory relief entitled *Ohio Casualty Insurance Company et al.* v. *Gar C. May et al.,* and related cross-actions against various named insureds or officers, directors or shareholders of named insureds, as well as Kent. The declaratory relief case seeks a statement of all parties' rights and obligations with respect to *Cumis* counsel and his fees. *Cumis* counsel in the pending third party action involved here reports that "because the insurers' claim smacks of malpractice, . . . in the case below *Cumis* counsel has *Cumis* counsel accepted by his own carrier."

In connection with the declaratory relief action, USF&G filed a motion for summary adjudication in October 1987, seeking, among other things, determinations it is not required to permit the named insured, MRI, to select its own counsel or to control the litigation in the Coordinated Action, and to the extent it is paying for MRI's defense it is permitted to control the defense in that litigation. The legal basis of the motion in this regard was that the *Cumis* decision is wrong and should not be followed. On December 17, 1987, the court denied the motion. This ruling furnishes the basis for the writ proceeding in D007745.

On October 27, 1987, USF&G filed its notice of motion for appointment of a referee pursuant to Code of Civil Procedure section 639. On November 17, 1987, the court appointed Judge Smith as referee without consultation or consent by all parties. For purposes of a status conference scheduled for March 21, 1988, USF&G filed a status conference brief regarding clarification of basis for reference regarding the reasonableness of *Cumis* counsel's billings and requesting an order authorizing Judge Smith to hear and decide "the whole issue of reasonableness after examining the Kent Firm's billings." *Cumis* counsel opposed USF&G's position. On March 22, 1988, the court ordered Judge Smith to hear the "whole" issue and ruled *Cumis* counsel was not entitled to a jury trial on the issues of the reasonableness of attorney's fees. This order forms the basis for the writ petition in D008099.

USF&G's writ petition was filed March 22, 1988, after Civil Code section 2860 became effective. When we issued an order to show cause on April 12, we requested the parties to address the following two questions: "1) If an insurer has reason to believe *Cumis'* counsel is not representing the insured in a reasonably competent fashion, what is the insurer's remedy?

"2) How can the insurer obtain nonprivileged information concerning the merits of the litigation so that an economic resolution of the case can be [e]ffected at the earliest possible date, consistent with the interest of the insured and the insurer?"

The parties, as well as amici curiae Charter Oak Fire Insurance Company and Travelers Indemnity Company, have filed briefs on these points.

DISCUSSION

I (D007745)

A

■ USF&G contends the defendant "insureds" in the declaratory relief action should not be permitted to select independent *Cumis* counsel at USF&G's expense because *Cumis,* granting a right to independent counsel to the insured under circumstances similar to those in this case, should not be followed. USF&G's primary claim is *Cumis* contradicts and is inconsistent with the binding precedent of *Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 278-279 [54 Cal.Rptr. 104, 419 P.2d 168], where the court found no merit in the insurer's contention it could not have defended the third party action alleging noncovered conduct by the insured because that would have embroiled it in a conflict of interests.

Considering an unclear exclusion clause in an insurance policy setting forth the duty to defend as a primary one, and in the context of rules concerning adhesion contracts and the reasonable expectations of the parties (65 Cal.2d 268-269), *Gray* held as a first basis of decision that the insurer bore the obligation to defend "because the policy led plaintiff reasonably to expect such defense, and because the insurer's exclusionary clause did not exonerate it . . . ." (65 Cal.2d at p. 275.)

"As an alternative but secondary ground for [its] ruling" (65 Cal.2d at p. 268) *Gray* accepted for purposes of argument the insurer's contention that the duty to defend arises only if the third party suit involves a liability for which the insurer would be required to indemnify the insured, and, even on this basis, found a duty to defend. (*Ibid.,* and see 65 Cal.2d at p. 275.)

After it had reached its conclusions on the above-described grounds, *Gray* discussed and found no merit in the insurer's argument it would have had a conflict of interest. It is to be noted there is no discussion of the attorney's ethical considerations in the court's analysis, which reads in its

entirety: "According to the insurer our ruling will require defense of an action in which the interests of insurer and insured are so opposed as to nullify the insurer's fulfillment of its duty of defense and of the protection of its own interests. For example, the argument goes, if defendant had defended against the Jones suit it would have sought to establish either that the insured was free from any liability or that such liability rested on intentional conduct. The insured, of course, would also seek a verdict holding him not liable but, if found liable, would attempt to obtain a ruling that such liability emanated from the nonintentional conduct within his insurance coverage. Thus, defendant contends, an insurer, if obligated to defend in this situation, faces an insoluble ethical problem.

"Since, however, the court in the third party suit does not adjudicate the issue of coverage, the insurer's argument collapses. The only question there litigated is the insured's *liability*. The alleged victim does not concern himself with the theory of liability; he desires only the largest possible judgment. Similarly, the insured and insurer seek only to avoid, or at least to minimize, the judgment. As we have noted, modern procedural rules focus on whether, on a given set of facts, the plaintiff, regardless of the theory, may recover. Thus the question of whether or not the insured engaged in intentional conduct does not normally formulate an issue which is resolved in that litigation. [Fn. In rare cases the issue of punitive damages or a special verdict might present a potential conflict of interests, but such a possibility does not outweigh the advantages of the general rule. Even in such cases, however, the insurer will still be bound, ethically and legally, to litigate in the interests of the insured.]

"In any event, if the insurer adequately reserves its right to assert the noncoverage defense later, it will not be bound by the judgment. If the injured party prevails, that party or the insured will assert his claim against the insurer. [Fn. omitted.] At this time the insurer can raise the noncoverage defense previously reserved. In this manner the interests of insured and insurer in defending against the injured party's primary suit will be identical; the insurer will not face the suggested dilemma." (65 Cal.2d at pp. 278-279.)

Contrary to the position of USF&G, it is clear *Cumis* is correct in stating "*Gray* is not controlling here because it does not address whether the scope of the duty to defend includes payment for the insured's independent counsel where a conflict of interest exists." (162 Cal.App.3d at p. 368.) To the extent *Cumis* can be read as viewing the above-quoted material from *Gray* as dictum, as did the *Cumis* trial court (see 162 Cal.App.3d at pp. 363-364), this conclusion too is correct. The statements were not necessary to the

decision reached earlier in the case on the bases of alternative primary and secondary grounds as we have described.

More important, *Cumis* emphasized ethical considerations applicable to the attorney representing the insured and not necessarily applicable to the insurer itself. (See 162 Cal.App.3d at pp. 366-367, 373-375; and see *Travelers Ins. Co.* v. *Lesher* (1986) 187 Cal.App.3d 169, 191 [231 Cal.Rptr. 791], *"The attorney hired by the insurer to represent the insured is an independent contractor,* and it appears that the insurer is not vicariously liable for the negligence of trial counsel appointed to represent the insured (provided, of course, the attorney is not controlled by the insurer)." (Italics added.) *Cumis* declared "[t]he lawyer's duties in the conflict of interest situation presented here are correlative to the insurer's contractual duty to pay for an independent lawyer when it reserves its rights to deny coverage under the policy." (162 Cal.App.3d at pp. 373-374.) *Cumis* concluded: "[T]he Canons of Ethics impose upon lawyers hired by the insurer an obligation to explain to the insured and the insurer the full implications of joint representation in situations where the insurer has reserved its rights to deny coverage. If the insured does not give an informed consent to continued representation, counsel must cease to represent both. Moreover, in the absence of such consent, where there are divergent interests of the insured and the insurer brought about by the insurer's reservation of rights based on possible noncoverage under the insurance policy, the insurer must pay the reasonable cost for hiring independent counsel by the insured. The insurer may not compel the insured to surrender control of the litigation [citations]. Disregarding the common interests of both insured and insurer in finding total nonliability in the third party action, the remaining interests of the two diverge to such an extent as to create an actual, ethical conflict of interest warranting payment for the insureds' independent counsel." (*Id.* at p. 375.)

Later decisions have refined and limited the scope of *Cumis*. *McGee* v. *Superior Court* (1985) 176 Cal.App.3d 221, 226-227 [221 Cal.Rptr. 421], considered the right of an automobile owner, injured while a passenger in her own vehicle, to disqualify counsel selected for the permittee defendant driver (Pedersen) and paid by the owner's automobile insurer. Citing *Cumis,* McGee argued a conflict existed between the insurer and insured (McGee) because a reservation of rights letter was sent to McGee, based upon a resident relative policy exclusion. Justice Kaufman cogently points out the reservation of rights is not founded on the possibility that coverage will be determined or affected by the nature of Pedersen's conduct as developed at trial. The resident relative exclusion "is an issue extrinsic to and independent of the issue of Pedersen's liability for petitioner's injuries." (*McGee* v. *Superior Court, supra,* 176 Cal.App.3d at p. 227.) Hence, where

the conduct of the insured party is not at issue for coverage purposes, the *Cumis* conflict does not arise.

*Native Sun Investment Group* v. *Ticor Title Ins. Co.* (1987) 189 Cal.App.3d 1265 [235 Cal.Rptr. 34] represents a significant limitation on the "rather wordy *Cumis* opinion." (*McGee* v. *Superior Court, supra,* 176 Cal.App.3d at p. 226.) In *Native Sun,* Ticor Title Insurance Company (Ticor) was called upon to defend Native Sun Investment Group (Native Sun) against two claims by the State of California against Native Sun's title to ocean front property in Carlsbad, California. Ticor agreed to pay all costs of defending the action, to indemnify Native Sun for any loss due to the state's success in asserting its claim as sovereign to the land, but advised there would be no indemnity for loss sustained as the result of the state's *Gion-Dietz* rights (implied dedication of property rights as a result of historic public use—see *Gion* v. *City of Santa Cruz* (1970) and *Dietz* v. *King* (1970), considered together at 2 Cal.3d 29 [84 Cal.Rptr. 162, 465 P.2d 50].) Ticor felt the *Gion-Dietz* claims were, as unrecorded claims, not insured under its policy.

Ticor later refused to fund a settlement offered by the state whereby Native Sun would have deeded a portion of its land to California, and Ticor would have paid its value to Native Sun. Ticor felt the state had not substantiated its claim as sovereign and would not pay for the land under the *Gion-Dietz* theory. Ticor did offer to file a quiet title action against the state as a way of clearing Native Sun's title. This was accomplished through counsel selected and paid by Ticor. Shortly before trial, the state made a settlement proposal accepted by Native Sun and approved by Ticor and the Ticor-retained attorney. Ticor then paid Native Sun for the value of the land conveyed to the state in the settlement. Native Sun then sued for interest payments, property taxes and attorney fees incurred while the state's claims were being litigated and settled. The attorney fees were paid to independent counsel retained by Native Sun because Ticor had reserved its rights concerning the *Gion-Dietz* portion of the state's title claims. Relying on *Cumis,* Native Sun sought reimbursement in full for such fees. In denying this contention and affirming the trial court, we stated: "In this case, resolution of the state's claims did not control the outcome of the parties' coverage dispute. Coverage of the *Gion-Dietz* claim turned solely upon interpretation of Ticor's policy. The action Jampol [Ticor's selected attorney] brought against the state did not place in issue any rule of law or fact which would bear upon the meaning of Ticor's policy. Thus, the holding in *Cumis* does not extend to the precise circumstances presented here.

"Because the state was asserting uncovered claims, it might be argued that to the extent Jampol's representation could result in liability on the

uncovered claims, as opposed to the covered claims, the rationale of *Cumis* nonetheless requires compensation of independent counsel. However, in this case we decline to take that step. The trial court found that Ticor gave Jampol: 'carte blanche to litigate all the issues including the issues of *Gion-Dietz,* covered and uncovered; and that at all times . . . Mr. Jampol proceeded diligently to litigate the matters that he was charged with on behalf of his client Native Sun. At no time, the court finds, did Mr. Jampol prefer the defendant's interest to those of his client, Native Sun, nor did he allow questions of coverage—though he was informed of them—to interfere with his litigation decisions regarding the third party claims.'

"Under these circumstances, where the retained attorney in fact was not subject to the conflicting forces which gave rise to *Cumis,* an extension of *Cumis* is not warranted. Ticor fulfilled its duty to defend." (*Native Sun Investment Group* v. *Ticor Title Ins. Co., supra,* 189 Cal.App.3d at pp. 1277-1278, fn. omitted.)

While these cases limit the broad language of *Cumis,* they do not support rejection of its basic premise. We point out, too, that the denial of review of *Cumis* by the Supreme Court accords the case some additional significance. (*DiGenova* v. *State Board of Education* (1962) 57 Cal.2d 167, 178 [18 Cal.Rptr. 369, 367 P.2d 865]; and see *Scott* v. *E. L. Yeager Constr. Co.* (1970) 12 Cal.App.3d 1190, 1194 [91 Cal.Rptr. 232], and cases cited.)

The Legislature's enactment of Civil Code section 2860, implementing *Cumis,* furnishes an extremely weighty reason for concluding the precedent of *Cumis* was correctly followed in this case by the trial court and is to be followed by this court. The Legislature has recognized *Cumis's* conflict premise and we cannot disregard that important determination.

Civil Code section 2860 provides, in part: "(a) *If* the provisions of a policy of insurance impose a duty to defend upon an insurer and *a conflict of interest arises which creates a duty on the part of the insurer to provide independent counsel to the insured, the insurer shall provide such counsel* to represent the insured unless, at the time the insured is informed that a possible conflict may arise or does exist, the insured expressly waives, in writing, the right to such counsel. An insurance contract may contain a provision which sets forth the method of selecting such counsel consistent with this section.

"(b) For purposes of this section, a conflict of interest does not exist as to allegations or facts in the litigation for which the insurer denies coverage; however, *when an insurer reserves its rights on a given issue and the outcome*

*of that coverage issue can be controlled by counsel first retained by the insurer* for the defense of the claim, *a conflict of interest may exist. No conflict of* interest shall be deemed to exist *as to allegations of punitive damages or* be deemed to exist *solely because an insured is sued for an amount in excess of the insurance policy limits.*

".  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"(d) When independent counsel has been selected by the insured, it shall be the duty of such counsel and the insured to disclose to the insurer all information concerning the action except privileged materials relevant to coverage disputes, and timely to inform and consult with the insurer on all matters relating to the action. Any claim of privilege asserted is subject to in camera review in the appropriate law and motion department of the superior court. Any information disclosed by the insured or by independent counsel is not a waiver of the privilege as to any other party.

".  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"(f) Where the insured selects independent counsel pursuant to the provisions of this section, *both the counsel provided by the insurer and independent counsel selected by the insured shall be allowed to participate in all aspects of the litigation. Counsel shall cooperate fully in the exchange of information that is consistent with each counsel's ethical and legal obligation to the insured.* Nothing in this section shall relieve the insured of his or her duty to cooperate with the insurer under the terms of the insurance contract." (Italics added.)

Additional provisions of Civil Code section 2860 deal with selection, fees and fee disputes (subd. (c)) as well as waiver procedure (subd. (e)).

Civil Code section 2860, subdivision (b), tells us when a conflict *may* exist, i.e., when there is a reservation of rights and first counsel chosen by the insurer can control the outcome of the coverage issue. It also tells us certain circumstances where a conflict of interest does not exist. Its language, however, does not preclude judicial determination of conflict of interest and duty to provide independent counsel such as was accomplished in *Cumis* so long as that determination is consistent with the section. On the other hand, the language clearly implies legislative acknowledgement of *Cumis's* recognition that in certain circumstances where there is a reservation of rights, the insured is entitled to independent counsel at the expense of the insurer.

In light of the foregoing, we conclude *Cumis* is to be followed. Having reached this conclusion, we do not discuss the remaining secondary arguments of USF&G as to why *Cumis* should not be followed. We have considered those arguments, however, and find them to be without merit.

B

We briefly turn now to the questions we asked concerning (1) an insurer's remedies when there is reason to believe independent counsel is not representing the insured in a reasonably competent fashion and (2) how the insurer can obtain nonprivileged information from *Cumis* counsel in order to effect economic, early resolution of the case consistent with the interest of both the insured and the insurer.

■ Civil Code section 2860 now applies to this case. In connection with the competency assurance question both the counsel provided by the insurer and the independent counsel are entitled to participate in all aspects of the litigation and they are required to cooperate fully in the exchange of information that is consistent with each counsel's ethical and legal obligation to the insured. (Civ. Code, § 2860, subd. (f).) The insured is not relieved of the duty to cooperate with the insurer under the terms of the policy. (*Ibid.*) Moreover, independent counsel and the insured have a duty to disclose to the insurer all information concerning the action except privileged materials relevant to coverage disputes. (Civ. Code, § 2860, subd. (d).) They both must timely inform and consult with the insurer on all matters relating to the action. (*Ibid.*) In camera review of any claim of privilege is provided for in the section, as well. (*Ibid.*)

These provisions, without establishing an exclusive remedy, furnish a remedy for insurers believing *Cumis* counsel is not representing the insured in a reasonably competent fashion.

Prompt filing of a declaratory relief action is an appropriate procedure for determining the application of the *Cumis* principles in a given case. Once the obligation of the insurer to provide *Cumis* counsel is placed in issue by such an action, the insurer's duty can often be promptly adduced through summary judgment or full trial of the declaratory relief action with its statutory calendar preference. (See Code Civ. Proc., 1062.3.) Likewise, when the insurer refuses to honor the insured's request for *Cumis* counsel, such a declaratory relief action can be filed by the insured to establish the right to independent counsel. In order to prevent unfair delay in the resolution of the underlying litigation, all parties in that case may be named as parties in the declaratory relief action. If not joined initially, a plaintiff in an

underlying action could be severely prejudiced by the delay necessary to prosecute the *Cumis* action. We leave it to the sound discretion of the trial court to consider any application for intervention from such a plaintiff.

In addition, to the extent questions of competency relate to any dispute concerning attorney's fees, the section provides a remedy of "final and binding arbitration by a single neutral arbitrator selected by the parties to the dispute." (Civ. Code, § 2860, subd. (c).) There is no impediment to applying such a procedure in this case even though the declaratory relief action and reference for an accounting in the dispute over attorney's fees occurred before Civil Code section 2860 took effect. The arbitration remedy of the section is now available to the parties.

By this conclusion we do not imply the parties must convert the fee dispute remedy they have already undertaken to the remedy provided by Civil Code section 2860. At the time the remedy used in this case was begun, the statute was not yet in effect and thus could not be applied.

Our conclusions otherwise concerning the insurer's remedies where there is reason to believe *Cumis* counsel is not doing a reasonably competent service do not imply that other remedies also may not be used. Particularly should this principle apply in a case like this one covering the transition from a period not covered by statute to a period in which the statute becomes effective.

On the second question concerning the insurer obtaining nonprivileged information about the merits of the case to the end of accomplishing an early, economic resolution consistent with the interests of the insured and the insurer, Civil Code section 2860, subdivisions (d) and (f), described above, furnish an adequate remedy. There is no need to elaborate on that question.

### II (D008099)

May the matter of a long account for attorney's fees such as is involved here be referred to a referee for the referee's recommendations to the court as to the reasonableness of the fees and without a jury determination? Contrary to Kent's position, we answer this question in the affirmative.

Code of Civil Procedure section 639, subdivision (a), provides: "When the parties do not consent, the court may, upon the application of any

party, or of its own motion, direct a reference in the following cases: [¶] (a) When the trial of an issue of fact requires the examination of a *long account* on either side; in which case the referees may be directed to hear and decide the *whole issue,* or report upon any specific question of fact involved therein." (Italics added.)

Kent challenges the scope of the trial court's reference of the "whole" issue to the referee. He contends that while the referee properly may consider the billing data to determine the accuracy of the amounts in question, the referee may not decide whether those amounts are reasonable. The basis of Kent's argument is the rule that Code of Civil Procedure section 639, subdivision (a), authorizes a compulsory reference only of "the whole issue involved in the accounting" and not the whole issue of the case. (*Barker Bros., Inc., v. Coates* (1931) 211 Cal. 756, 758 [297 P. 8]; *Bird v. Superior Court* (1980) 112 Cal.App.3d 595, 599 [169 Cal.Rptr. 530].)

The major flaw in Kent's argument is that while the attorney's fees controversy is a major portion of the case, it is not the whole issue of the case as his argument presupposes. The complaint for declaratory relief contains over two pages of statements of issues in dispute in the case. Issues other than the attorney's fees matter include "[w]hether KENT and/or his associates and paralegals are sufficiently qualified by virtue of training and experience to represent the insured defendants in the tendered lawsuits," "[w]hether plaintiffs are entitled to review the work performed by KENT," and "[w]hether plaintiffs are entitled to select competent counsel to associate with *Cumis* counsel and participate in the defense of the tendered lawsuits on behalf of the insured defendants." It is thus clear that the *Barker Bros.* rule precluding reference of the whole case under the statutory language permitting reference of the "whole issue" was not breached by the reference here.

Nor is there any proscription against a referee's determination of the reasonableness of the fees that are the subject of the reference. Looking at the statutory language, the matter of the reasonableness of fees literally is a part of the "whole issue." Moreover, other types of cases not dealing with attorney's fees have approved referee determination of value, a matter that includes some measuring of reasonableness. (See *Fredendall v. Shrader* (1920) 45 Cal.App. 719, 726-727 [188 P. 580], determination of market value of oil sold or disposed of by defendant improperly in control of an oil company; *Fooshe v. Sunshine* (1950) 96 Cal. App.2d 336, 345-346 [215 P.2d 66, 16 A.L.R.2d 1142], partnership accounting determining whether partnership operated at a profit or a loss for purposes of assessing propriety of one partner's withdrawals.) We conclude the referee may make his determi-

nation of the reasonableness of the attorney's fees in question and include this determination in his recommendation to the court which, after all, makes the final factual determination of the matter.

On the question of whether there is any right to a jury trial the basic rule is the right to trial by jury guaranteed by the Constitution (Cal. Const. art. I, § 16) is the right as it existed at common law at the time the Constitution was adopted. (*C & K Engineering Contractors* v. *Amber Steel Co.* (1978) 23 Cal.3d 1, 8 [151 Cal.Rptr. 323, 587 P.2d 1136]; *People* v. *One 1941 Chevrolet Coupe* (1951) 37 Cal.2d 283, 286-287 [231 P.2d 832].) *In re Moore* (1887) 72 Cal. 335, 338-339 [13 P. 880], considered whether a long account in a probate matter was subject to a right to a jury trial at common law, and pointed out it was not. *Moore* concluded: "The trial of the issues made required the examination of a long account; that, indeed, was the purpose of the entire proceeding. In such cases the court may of its own motion, and without the consent of the parties, refer such issue to a referee to hear and report. And we do not understand that at common law the right existed to have the examination of a long and complicated account made by a jury.

"If the verdict is only advisory to the court, and the court has found upon all the issues submitted, it would seem that a mere irregularity in the formation of the jury or error in the instructions could not affect the substantial rights of the appellant." (72 Cal. at p. 339.)

*Moore* pointed out "[i]t is utterly impracticable for a jury to wade through, comprehend, and disentangle a long account, or to express an intelligent judgment upon each item." (72 Cal. at p. 338.) *Moore* also suggested that in matters where much is left to the discretion of the court, there the settlement of accounts of administrators and executors, and where a jury trial right was denied as inappropriate at common law, the right to jury trial must yield. (*Id.* at p. 340.)

While we recognize *Moore* dealt with the area of probate, its rules and underlying policies apply equally to this action for declaratory relief seeking an equitable resolution of matters arising in a particular factual context not discussed in *Cumis* but born as a result of that case. The force and thrust of the declaratory relief pleading is equitable. It seeks a declaration of the nature and extent of what Kent acknowledges is "some interest, obligation and duty that rests between the insurance company and the independent counsel providing a defense at the insurance company's expense."

The matter is unlike a declaratory relief action sought to be tried in connection with the underlying action for damages against the insured, in

which situation the jury trial right attaches. (See *State Farm etc. Ins. Co.* v. *Superior Court* (1956) 47 Cal.2d 428, 431-432 [304 P.2d 13].) ■ Attorney's fees are not like the usual item of damages; it is for the court, which is the best judge of the value of professional services, to determine what would be a reasonable amount. (*Mabee* v. *Nurseryland Garden Centers, Inc.* (1979) 88 Cal.App.3d 420, 427 [152 Cal.Rptr. 31].) In this connection, where there is a long account including disputed items, it is fully appropriate for the court to refer the matter for the conduct of the equitable proceeding of an accounting. (See *San Pedro Lumber Co.* v. *Reynolds* (1896) 111 Cal. 588, 596 [44 P. 309]; *Civic Western Corp.* v. *Zila Industries, Inc.* (1977) 66 Cal.App.3d 1, 14 [135 Cal.Rptr. 915]; see Devlin, *Jury Trial of Complex Cases: English Practice at the Time of the Seventh Amendment* (1980) 80 Colum. L.Rev. 43, 66, 70.)

■ In such an equitable proceeding the right to trial by jury does not apply. (*See C & K Engineering Contractors* v. *Amber Steel Co., supra,* 23 Cal.3d 1, 8-10; *Raedeke* v. *Gibraltar Sav. & Loan Association* (1974) 10 Cal.3d 665, 671 [111 Cal.Rptr. 693, 517 P.2d 1157].) Accordingly, Kent's claim of a jury trial right does not prevail.[3]

DISPOSITION

Each writ requested in D007745 and D008099 is denied.

Kremer, P. J., and Wiener, J., concurred.

On November 8, 1988, the opinion was modified to read as printed above.

---

[3] In cases in which other remedies have not been undertaken before January 1, 1988, and in which there are not "different or additional policy provisions pertaining to attorney's fees or providing for methods of settlement of disputes concerning those fees," "[a]ny dispute concerning attorney's fees *not* resolved by *these methods* shall be resolved by final and binding arbitration by a single neutral arbitrator selected by the parties to the dispute." (Civ. Code, § 2860, subd. (c).)